Reid *v.* Lord.

---

ELSIE W. REID *vs.* CHARLES E. LORD, ADMINISTRATOR.

First Judicial District, Hartford, March Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

The conclusions of the jury that the testator, at the time of the execution of his will, was possessed of testamentary capacity and was not subjected to undue influence by one of his daughters, were reasonable in view of the conflicting evidence upon the issues involved.

It cannot be said, as a matter of law, that the testator lacked capacity to make a will merely because, four months prior to its date, he was adjudged insane, placed under the care of a conservator, and confined in a sanitarium from which he was released on parole within eighteen days.

Argued March 6th—decided April 3d, 1925.

APPEAL by the plaintiff from an order of the Court of Probate for the district of Hartford refusing to admit to probate an instrument alleged to be the last will and testament of James W. Reid, late of Hartford, deceased, taken to the Superior Court in Hartford County and tried to the jury before *Marvin, J.;* verdict and judgment for the plaintiff, and appeal by the defendant. *No error.*

*Edward J. Daly,* with whom, on the brief, was *Albion B. Wilson,* for the appellant (defendant).

Reid *v.* Lord.

*George H. Cohen,* with whom, on the brief, was *Naaman Cohen,* for the appellee (plaintiff).

KEELER, J.   James W. Reid, maker of the will involved in the instant case, had lived in Hartford for many years prior to his death, doing business as a costumer and tailor, where he died August 7th, 1922, seventy-six years old, leaving an estate of a value from $5,000 to $6,000.   His heirs at law were his three daughters, the appellant, Elsie W. Reid, and her married sisters, Edith R. Potter and Agnes R. Oakes.   The two latter had lived on adjoining tracts of land in East Hartford.   The appellant had lived in New York for six or seven years, employed as a secretary.   The wife of the testator died on March 29th, 1922, at the home of her daughter Mrs. Oakes.   After the death of his wife the testator lived with Mrs. Potter, and became physically and mentally ill.   Upon the application of his son-in-law Frank W. Potter, the Court of Probate for the district of Hartford on April 17th, 1922, committed the testator to the Hartford Retreat as an insane person, and on an application by all three of his daughters the same court, on April 25th, appointed Potter as his conservator, and the latter qualified as such.   After staying at the Hartford Retreat for about eighteen days he was paroled and went to the house of Mrs. Oakes.   In June decedent went to a shore cottage at Crescent Beach which he owned, and lived there with his daughters Mrs. Potter and Mrs. Oakes.   Later in the month he returned to Hartford and went to live in the rooms on Asylum Street which he had previously occupied while resident there.   About this time testator, and also his daughter Elsie W. Reid, called upon the judge of probate for the district of Hartford, in order that his conservator might be removed.   While living in his rooms in Hartford it appears from the evidence

Reid v. Lord.

that he occupied himself with various matters of business and personal concern. On July 23d, on account of ill health, he entered the City Hospital. While there he consulted Frederick C. Eberle, Esq., an attorney at law, and on July 24th, at his rooms on Asylum Street, he executed the will, which is now in controversy. By this will he gives his daughter, the appellant, his cottage at Crescent Beach, $1,000 to which he was entitled under the will of one Stevenson, also the residue of his estate, and appoints her executrix of his will. To a friend, Margaret M. Houghtaling, he gives $100; he gives to his three grandchildren, two of them children of Mrs. Oakes and one a child of Mrs. Potter, $150 to be divided among them. To his daughters Mrs. Potter and Mrs. Oakes, he gives each $5. The will was offered for probate, and after an extended hearing, probate thereof was refused by the Court of Probate for the district of Hartford, and intestate administration was granted to Charles E. Lord. Elsie W. Reid appealed to the Superior Court, where a verdict was rendered in her favor January 22d, 1924, which the appellee moved to set aside as against the evidence. This motion was denied by the Superior Court, and judgment rendered on the verdict March 31st, 1924. The appellee in the Superior Court appealed to this court, assigning as error the denial of his motion to set aside the verdict.

The issues tried in the Superior Court were those of testamentary capacity, and alleged undue influence of Elsie W. Reid upon her father. There is little evidence in the case which would have justified the jury in finding that the testator was unduly influenced. It certainly appears from the evidence that he had considerable resentment as regards Mrs. Potter and Mrs. Oakes and their respective husbands. A number of letters from him to his daughter Elsie indicate his displeasure

with the rest of his family, his impatience with their attempts to manage him and his business affairs, his displeasure with too much unsolicited advice, and a feeling of suspicion that they had designs with regard to his property. There is little, if anything, in the evidence to show that his feeling toward his married daughters was inspired or intensified by any influence exerted by his daughter Elsie. This claim in the case was not greatly stressed by the contestant administrator.

The issue of testamentary capacity was the important one in the case, and was productive of much conflicting evidence, and not free from doubt. The testator had been adjudged insane and a conservator set over him, still, as the contestants of the will concede, this is not conclusive; in fact it is far from conclusive in view that he was enlarged under parole after a stay of eighteen days and went about his business. On both sides there was testimony by lay and medical witnesses as to his mental capacity decidedly conflicting. Dr. Root attended him for heart and kidney affections about July 18th and found him quite ill, but noticed nothing abnormal in his mental processes, and the testator appeared to him as with his customary mentality, and he made no special examination in that regard. He had known the testator for many years, associating with him as a member of the Putnam Phalanx and various Masonic orders, and had met him in a business way. This physician in his early practice had served three years in an institution for nervous disorders in Massachusetts, and afterward as assistant superintendent of the Hartford Retreat, and had remained interested in mental diseases after he had gone into general practice, and had been called on by the Governor of the State to serve on a number of commissions of lunacy. Mr. Eberle, when consulted as to

the preparation of his will, after an extended conference found nothing in his conversation or conduct indicating mental incapacity. Mrs. Houghtaling, who cared for him to some extent when he became ill about the middle of July, observed him from that time until he was taken to the hospital, under trying circumstances, and testified that he was sane. There were other lay witnesses testifying to the same effect.

In favor of the contestants his married daughters testified as to his mental capacity and regarded him of unsound mind, and their husbands to like effect, together with other lay witnesses. The chief reliance of the contestants is upon the testimony of Dr. Paul Waterman, who testified before the Court of Probate on the hearing on the probate of the will, and who died before the hearing in the Superior Court. His testimony was reproduced from the notes of the judge of probate. He had examined the decedent about April 17th, and found that organic physical disease had produced slight mental deterioration. He saw him again July 26th (two days after he made his will) and found that he had failed much since April, and was suffering from very distinct mental disorder. In effect, the witness considered him insane. There are eight letters from the deceased to his daughter Elsie, dating from May 31st to July 19th, exhibits in the case, from which there may be gathered the impression that he was a man who had once been busy, and was now occupying himself with affairs of small moment, which were annoying him, as to which he expresses himself at considerable length. Nothing in them seems to indicate dementia, or indeed any great degree of mental impairment. The letters are, however, filled with his belief that his sons-in-law and married daughters have more solicitude in regard to the eventual disposition

of his estate, than affection for him or care for his comfort.

The verdict of the jury was rendered upon a considerable mass of conflicting evidence, and the jury might reasonably have come to the conclusion at which they arrived.

There is no error.

In this opinion the other judges concurred.